**JUDGE SWEET**

**11 CIV 7359**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

MARYAM BAGHERITOOLABI NIA,

                      **Plaintiff,**

      v.

ERIC K. SHINSEKI, SECRETARY
DEPARTMENT OF VETERANS AFFAIRS,

                  **Defendant.**

--------------------------------------------------------------x

:   Civil Action No.

:

:   COMPLAINT

:

:

:   DEMAND FOR JURY TRIAL

:

:

:

RECEIVED
OCT 18 2011
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, MARYAM BAGERHITOOLABI NIA, ("plaintiff" or "Dr. Nia") by and through her attorneys, LEVINE & BLIT PLLC, as and for her Complaint against Defendant, ERIC K. SHINSEKI, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS, ("defendant" or "VA") alleges upon information and belief:

## NATURE OF THE ACTION

1.    This is a civil action brought to remedy employment discrimination and harassment on the basis of race, sex/pregnancy and/or disability, a hostile work environment, and reprisal in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"); the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k) et seq. ("PDA"); and the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq. ("Rehabilitation Act"), and for any other causes of action which can be inferred from the facts set forth herein.

2.    Defendant's actions were unlawful and plaintiff brings this action for injunctive and declaratory relief, actual and compensatory damages, punitive damages, attorneys' fees, and costs and other appropriate equitable and legal relief.

## JURISDICTIONAL PREREQUISITES AND VENUE

3.    Plaintiff filed a timely EEO complaint of employment discrimination with the Agency's Office of Resolution Management ("ORM") against the defendant's officials at the VA New York Harbor Healthcare System, on or about March 10, 2010 (VA Case Number 200H-0630-2010101625) complaining of the unlawful actions alleged herein.

1

4.      Plaintiff filed a subsequent formal EEO complaint of reprisal with the Agency's ORM against the officials at the VA New York Harbor Healthcare System, on or about February 3, 2011 (VA Case No. 200H-0630-2011101204) complaining of continuing unlawful actions, all of which are reasonably related to and resulted from her claims alleged in VA Case Number 200H-0630-2010101625.

5.      Plaintiff was issued a Final Agency Decision ("FAD") from the Department of Veterans Affairs concerning VA Case Number 200H-0630-2010101625, dated July 21, 2011.   This Complaint is timely filed within the ninety (90) days limitations following the plaintiff's receipt of the FAD.  A copy of the Notice of Transmittal of Final Agency Decision or Order, dated July 25, 2011, is annexed hereto as "Exhibit A."

6.      Plaintiff has complied fully with all administrative prerequisites for her claims alleged herein and with all prerequisites to jurisdiction in this Court.

7.      This Court has original jurisdiction over this action under 28 USCA §1331.

8.      Venue in this Court is proper pursuant to 28 USCA § 1391(e) because defendant is an agency and/or employee of the United States of America that has a presence in the Southern District of New York and because the events giving rise to the claim occurred this district.

## PARTIES

9.      Plaintiff is a Caucasian female of Iranian national origin and is a resident of New York County in the State of New York.  Defendant is an agency and/or employee of the United States of America.

10.     At all times relevant to this action, plaintiff was an "employee" of the defendant and entitled to protection under the federal anti-discrimination statutes.

11.     Plaintiff was hired by the defendant in June 2005 to work as an attending Anesthesiologist/Cardiac Anesthesiologist at the Department of Veterans Affairs - New York Harbor Healthcare System ("NYHHS"), Manhattan Campus, which has facilities located at 423 E. 23rd Street, New York NY 10010.  On or around February 2011, defendant transferred plaintiff's employment to its Brooklyn Campus, which has facilities located at 800 Poly Place, Brooklyn NY 11209.

2

12.     Upon information and belief, the Manhattan Campus has more prestige and superior facilities than all other campuses run by the NYHHS in the tri-state area and is the only campus which can allow the plaintiff to engage in the specialized practice of Cardiac Anesthesiology.

13.     Upon information and belief, and at all times relevant to this action, Dr. Dorina Botas ("Botas") was employed as the Chief of the Department of Anesthesiology ("Department Chief") at the Manhattan Campus and, as such, was in a position of authority and control over the plaintiff's employment with defendant.

14.     Upon information and belief, and at all times relevant to this action, Dr. Michael Simberkoff ("Simberkoff") was employed as the Chief of Staff at the Manhattan Campus and, as such, was in a position of authority and control over the plaintiff's employment with defendant.

15.     Upon information and belief, and at all times relevant to this action, the following individuals were employed by the defendant as Attending Anesthesiologists and as such, were similarly situated to the plaintiff during her employment at the Manhattan Campus: Drs. Jan Purgess, Michele Comerford, Magdelaine Deeby, Jonathan Aranoff and Garnett Headley.

16.     Upon information and belief, and at all times relevant to this action, the following individuals served as administrative or human resource officials at NYHHS and as such, were in a position of authority or control to recommend tangible employment actions affecting the terms, conditions and benefits of the plaintiff's employment with defendant: Deborah Inella, Chief of Human Resources; Rita Verano, Administrative Officer; and Michael Ingino, Health Systems Specialist to the Executive Chief of Staff.

## FACTUAL ALLEGATIONS

17.     At all times relevant to this action, the earning and accumulation of leave are privileges of federal employment and are matters of administrative determination. Officials responsible for granting leave or approving an absence to an employee were expected to adhere to the policies and procedures prescribed the defendant.

18.     At all times relevant to this action, Botas and Verano were officials designated by the defendant to administer its leave system for plaintiff and similarly situated employees in the Department of Anesthesiology.

3

19.     At all times relevant to this action, and as the Department Chief, Botas was responsible for maintaining control of attendance, leave, and excused absences for her employees and/or assuring that certification of time and attendance reports were correct in all respects. Botas would review an employee's request for leave and forward it to Verano for final approval.

20.     At all times relevant to this action, and as the Department Chief, Botas was also responsible, in part, for determining whether her employees would earn additional compensation in the form of "Performance Pay".

21.     On or about August 2009, Botas was selected from a pool of candidates, which included plaintiff, for a promotion to the Department Chief position.

22.     On or about May 2009, and upon learning that plaintiff had also applied for the aforementioned promotion, Botas accused Dr. Nia of 'stabbing her from behind by applying for the job' and threatened 'how dare [she] apply for the job without telling her.'

23.     Beginning on or about August 2009, and shortly after Botas was promoted to the Department Chief position, she began to apply the defendant's policies concerning time, attendance and performance pay in an inequitable and discriminatory manner within the department.

24.     On or about December 3, 2009, plaintiff learned that she was charged Leave Without Pay ("LWOP") during August 2009, while similarly situated employees were permitted to use other options to take leave. Such options included characterizing the absence as an 'administrative' and/or 'authorized' and/or "present in lieu of ..." leave, thereby allowing the employee to accumulate paid annual and sick days.

25.     Upon information and belief, Botas and Verano further allowed other employees in the department, who had already exceeded the amount of permissible leave, to continue to take unquestioned leave and were not charged LWOP (a temporary non-pay status and absence from

4

duty to be granted only at the request of an employee and was not to be imposed as a penalty) as was the plaintiff.

26.     Botas also singled out plaintiff and denied her request to be compensated for her attendance at a weekend Post Graduate Assembly in Anesthesiology in New York medical conference but had granted the compensation requests made by similarly situated employees for their attendance at similar medical conferences.  Botas denied the request by telling plaintiff that she only gets one weekday to attend the conference and that even if she spent the weekend attending the conference, she wouldn't get weekend compensation because Botas 'did not want to spoil the thing with the administration.'

27.     Upon information and belief, Botas granted compensation to Comerford, a similarly situated employee, on at least four different occasions for her attendance at medical conferences, including a weekend conference, and because Botas had authorized the weekend attendance, Comerford could accumulate and apply those weekend dates towards future paid annual and sick days.

28.     Upon information and belief, Botas applied the performance pay criteria in her department in an arbitrary manner that frequently excluded the plaintiff from earning additional compensation and/or or leave benefits on par with similarly situated employees like Comerford and Headley.

29.     Examples of Botas' arbitrary application of the performance pay criteria in her department included her creation of new standards, such as the studying for board exams above and beyond the 'American Board of Anesthesiology," and by excluding the plaintiff from running the floor during her absences in favor of similarly situated employees in the department.

30.     Upon information and belief, the department provided Botas with numerous opportunities to accrue sick and annual leave benefits in addition to the forty days of annual leave and sick leave Botas had used in 2006 and in 2007 while she when she was similarly situated to the plaintiff, including but not limited to running the floor for thirteen days.  As a result of having

5

such opportunities, Botas accrued enough leave benefits to take approximately sixty-one days of paid maternity leave.

31.     Botas' repeated failure to select the plaintiff to run the floor was discriminatory and adverse to the plaintiff because prior to Botas' promotion, the plaintiff was selected to run the floor for approximately thirty-eight days since 2006, an amount which would enable the plaintiff to accrue nineteen extra days in leave benefits.

32.     On or about December 3, 2009, and during a discussion that occurred between the plaintiff, Botas, Comerford and Deeby, the plaintiff complained that she was repeatedly singled out and subjected to discriminatory and arbitrary policies compared to other similarly situated employees in the department. They dismissed plaintiff's complaint and responded by telling her that (i) Headley was the only African-American attending in the department, and as such, no one can ever touch him; and (ii) that plaintiff could not compare herself to Comerford because Comerford had additional protection on the basis of her sexual orientation and can "play the gay card" when needed.

33.     On or about December 3, 2009, the plaintiff learned that she had been charged LWOP during August 2009 because of discriminatory reasons.

34.     On or about December 3, 2009, the plaintiff learned that Botas had denied her request for compensation for the two weekend days to attend the Post Graduate Assembly in Anesthesiology Conference in NY on December 11-15, 2009 because of discriminatory reasons.

35.     On or about December 3, 2009, the plaintiff learned that Botas denied her opportunities to obtain additional compensation because of discriminatory reasons.

36.     On or about December 3, 2009, the plaintiff learned that Botas denied her opportunities to use administrative absences and higher performance pay because of discriminatory reasons.

6

37.    On or about December 3, 2009, the plaintiff learned that she had not been informed of the possibility to accrue leave benefits which would have provided her with a fully paid maternity leave because of discriminatory reasons.

38.    On or about December 3, 2009, the plaintiff learned that Botas prevented her from taking extra calls to pre-pay her call duties upon her return from a maternity leave of absence because of discriminatory reasons.

39.    On or about December 3, 2009, the plaintiff was told that she was subjecting herself to termination if she did not pay-back all the call duties she missed upon her return from maternity leave because of discriminatory reasons.

40.    On or about December 3, 2009, Botas informed the plaintiff that due to the races and sexual orientations of her similarly situated colleagues in the department, the concerns she raised about the terms and conditions of her employment could not be addressed.

41.    Shortly after plaintiff made complaints about the aforementioned discrimination to human resources on January 5, 2010, and subsequently to the defendant's Office of Resolution Management (ORM), she was subjected to retaliation and an increasingly hostile work environment in her employment.

42.    Plaintiff provided recordings of the aforementioned December 3, 2009 discussion to the ORM on multiple occasions throughout the administrative EEO process but the ORM failed to acknowledge the existence of the direct evidence of discrimination when it issued the final agency decision.

43.    Upon information and belief, and in January 2010, Botas openly discussed plaintiff's written discrimination complaints with other employees in the department, and as a result of Botas' actions, the plaintiff became isolated from her colleagues, who confronted her with adverse comments such as "Toolabi, what are you doing?  If you burn the house, you'll burn anyone inside the house with it," from Comerford on January 29, 2010.

7

44.     Botas and Verano also began to close scrutinize the plaintiff's leave times and work schedules compared to their scrutiny of the leave times and work schedules of other similarly situated employees, which caused the plaintiff to be denied the same degree of flexibility they afforded to other anesthesiologists in the department.

45.     On or about January 2010, and while the plaintiff was undergoing IN VITRO FERTILIZATION (IVF), defendant failed to provide plaintiff with similar work-schedule flexibility that was customarily provided by the department to similarly situated employees in need of a reasonable accommodation because of discriminatory and retaliatory reasons.

46.     Upon information and belief, the defendant provided Botas with a modified work schedule to accommodate her IVF related procedures in 2007, provided Aranoff with a modified work schedule to accommodate his needs for religious observance of the Sabbath and had also provided Headley with a modified work schedule after his return from a long-term disability related leave of absence in 2009.

47.     The reasonable accommodations that the department provided to Aranoff, which would allow him to observe the religious Sabbath included not scheduling him to work or be on call after 2:30 pm every Friday in the fall and winter months, and to also provide him with relief if he was scheduled to be in an operating room at said times.  Upon information and belief, Aranoff was also provided with additional flexibility to manage his work schedules pursuant to the needs of his children.

48.     Notwithstanding the customary practice in the department to provide its employees with their requested accommodations, nor that a modified work schedule was a reasonably available disability related accommodation, the plaintiff was denied her requested accommodations in January 2010 because of discriminatory and retaliatory reasons.

49.     After plaintiff made the aforementioned requests for a modified work schedule, Botas and Comerford accused her of trying to take a better next day schedule, and Botas further antagonized the plaintiff for making the requests, telling her that "if [plaintiff] can't take calls on

other weekdays, either [her] husband should change his job so [they] could live closer to the hospital or [plaintiff] should think about another job".

50.    Plaintiff became pregnant in late January 2010 and informed Botas that as a result of her high risk pregnancy, her medical providers advised her not to work in operating rooms which use x-ray machines continuously.   Plaintiff's medical providers also notified the defendant of the same, but Botas denied the plaintiff's request for said accommodation.

51.    Botas was clearly aware of the perils and risks associated with high-risk pregnancies and operating rooms which used x-ray machines because when Botas herself underwent IVF in 2007 and/or had a high-risk pregnancy, she made a similar request to the department and received accommodations to ensure that she would not be scheduled to work in the potentially toxic atmosphere of certain operating rooms.

52.    Notwithstanding Botas' own past history of requesting and accepting the aforementioned accommodation from the department, Botas intentionally harassed the plaintiff on the basis of her high-risk pregnancy on February 8, 2010 when she dismissed the plaintiff's concerns and told her that the risks associated with were working near an x-ray machine were negligible.

53.    Botas knowingly continued to schedule the plaintiff to work in operating rooms with x-ray machines on January 21, 2010 and on February 16, 2010.

54.    Botas' failure to ensure that the plaintiff was not scheduled to work in certain operating rooms caused her to be antagonized and humiliated during department meetings and left her scrambling at the last minute to find another colleague of hers who would be willing to cover for her work in such operating rooms.

55.    On or about January 7, 2010, Botas and Purgess forced the plaintiff to give up and the vacation days she selected during the Memorial Day 2010 long weekend in anticipation of the plaintiff's pregnancy to ensure that she worked one minor and two major holiday calls weekends

9

for the year despite the department's past practice of accommodating similarly situated employees, such as Headley, to work only one minor holiday call in 2009.

56.     During the course of several discussions that plaintiff had with Botas and other employees in the department concerning her upcoming maternity leave of absence, the plaintiff was subjected to retaliatory and adverse comments, including but not limited to being told that (i) she was making herself subject to being fired after returning from maternity leave, and (ii) she will have to pay back the "call duties" to the department after returning from maternity leave or will be subject to being fired.

57.     On February 3, 2010, plaintiff was informed that she would have to payback call duties. Upon information and belief, similarly situated employees in the department were not subjected to the aforementioned mandate to pay back "call duties" or face employment termination after their return from a leave of absence.

58.     On or about February 26, 2010, plaintiff began to experience complications in her pregnancy and after suffering a work-related injury, plaintiff was ordered by her medical providers to stay on bed rest due to her condition.

59.     On March 10, 2010, the plaintiff filed her formal EEO discrimination complaint against the defendant (VA Case Number 200H-0630-2010101625).

60.     On or about November 30, 2010, the plaintiff was cleared to return to her employment position *without* restrictions by her doctor and the U.S. Department of Labor (DOL) notified the defendant of the same.

61.     On November 30, 2010, the plaintiff returned to the Manhattan VA to resume her employment and learned that her office had been cleared of all of her personal information and belongings, and that Botas and Ingino had made the decision to give her office to another newly hired anesthesiologist.

62.     Botas' decision to remove the plaintiff from her office was in retaliation for her discrimination complaints because the plaintiff clearly expressed her intention to return to employment after taking maternity leave and because no other similarly situated employee in the department was removed from their office while taking leave in the past.

63.     On November 30, 2010, Botas refused to sign the plaintiff's paperwork, including a legal name change document and computer access form and instead sent her to the executive office and Simberkoff.

64.     At all times relevant to this action, Simberkoff had notice of plaintiff's EEO complaint and of the allegations that she had made against Botas.

65.     On November 30, 2010, Simberkoff told the plaintiff that she was not allowed to work until the defendant received a letter authorizing her return to full duty status directly from her doctor.  However, the DOL had already provided the defendant with an authorization letter in mid-November 2010.

66.     On November 30, 2010, the computer access forms that the department secretary gave to the plaintiff were taken away by Botas and Verano, and the plaintiff was instead issued a subsequent form which provided for significantly less computer access and was signed by Simberkoff.

67.     On or around November 30, 3010, Simberkoff told the plaintiff that she must withdraw her request for full privileges and if she did not withdraw said request, Simberkoff would refuse to approve her request.  Simberkoff also threatened that he would have to report plaintiff to the New York State licensing authorities based on the denial of being granted such privileges.

68.     On or about December 9, 2010, the plaintiff was issued a re-appointment letter from the defendant which set forth a list of her current privileges as a staff physician.  This letter listed significantly less privileges than those she received in 2008 and/or prior to her engagement in protected activity.

69.     On or about December 9, 2010, the plaintiff again asked Simberkoff about her limited privileges and when she would be allowed to return to her full privileges as an anesthesiologist in the department and his response was that there were still a few issues that needed to be worked out with the DOL.  However, later that day, the plaintiff was informed by the DOL that there were no outstanding issues that needed to be worked out and that she was entitled to return to the same position, terms, and conditions of her employment that she enjoyed prior to taking her leave of absence.

70.     Beginning on or about November 30, 2010 and continuing thereafter until February 27, 2011, the plaintiff was required to report to the executive office for her scheduled tour of duty instead of the Department of Anesthesiology.

71.     Upon information and belief, no other similarly situated employee was removed from the department after their return from leave and aforementioned actions taken by the defendant was in retaliation for her complaints of discrimination.

72.     On or about January 12, 2011, the plaintiff was informed by Simberkoff that he no longer had an employment position to give her as an anesthesiologist at the Manhattan Campus and told her that she could either: (i) stay at the Manhattan Campus and continue to perform her very limited privileges and see patients only in the clinic, or (ii) transfer to the Brooklyn Campus.

73.     Both of the aforementioned options were adverse to the terms and conditions of the plaintiff's employment because the plaintiff has (i) additional training as a Cardiac anesthesiologist and the Manhattan Campus is the only NYHHS facility in the tristate area where cardiac surgery is performed; and (ii) a transfer to the Brooklyn Campus would cause the plaintiff to be outside of the one-hour policy restrictions that the defendant required of its physicians, and the plaintiff immediately informed him that neither of these options were viable to acceptable to her.

74.     On or about January 21, 2011, and over plaintiff's objection to the transfer, Simberkoff handed her a letter of reassignment and threatened that if she did not report for duty at the Brooklyn Campus, she would be subject to the disciplinary action of AWOL (absence without leave).

75.     On or about January 21, 2011, the plaintiff again applied for full privileges and cardiac anesthesiology privileges and she subsequently learned that the colleague she had chosen to fill out her peer review forms were being unnecessarily harassed by the defendant in a manner that was inappropriate and unprofessional.

76.     On or about February 1, 2011, the plaintiff learned that the Manhattan Campus had hired approximately three new anesthesiologists in the past year and that it continued to hire per diem anesthesiologists as a result of the department being short on staff and that Simberkoff's stated reasons for her reassignment to the Brooklyn Campus were merely pretext for retaliation.

77.     Beginning on or about March 16, 2011 through March 28, 2011, the plaintiff again learned that she was unfairly charged LWOP by the defendant.

## AS AND FOR A FIRST CAUSE OF ACTION
### Discrimination under Title VII

78.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 77 as if set forth fully herein.

79.     At all times relevant to this action, defendant was an "employer" within the meaning of Title VII and the plaintiff was an employee entitled to protection from discrimination based upon her race, sex and reprisal.

80.     Pursuant to the acts and practices alleged above, the defendant engaged in a pattern of race discrimination and/or reverse race discrimination by subjecting the plaintiff to disparate and unfavorable treatment and mistreatment in the terms and conditions of her employment.

81.     Pursuant to the acts and practices alleged above, the defendant engaged in a pattern of sex discrimination by subjecting the plaintiff to disparate and unfavorable treatment and mistreatment in the terms and conditions of her employment.

82.     As a result of the defendant's unlawful acts and practices alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages, for inter alia, mental

13

anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

83.     Defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under Title VII and plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### Retaliation under Title VII

84.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 83 as if set forth fully herein.

85.     At all times relevant to this action, defendant was an "employer" within the meaning of Title VII and the plaintiff was an employee entitled to protection from reprisal after she complained of discrimination and/or engaged in a statutorily protected activity.

86.     Pursuant to the acts and practices alleged above, the defendant engaged in a pattern of retaliation and/or reprisal towards the plaintiff after she complained of discrimination by subjecting her to disparate and unfavorable treatment and mistreatment in the terms and conditions of her employment.

87.     As a result of the defendant's unlawful acts and practices alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages, for inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

88.     Defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under Title VII and plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### Hostile Work Environment under Title VII

89.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 88 as if set forth fully herein.

90.    At all times relevant to this action, defendant was an "employer" within the meaning of Title VII and the plaintiff was an employee entitled to protection from a hostile work environment.

91.    Pursuant to the acts and practices alleged above, the defendant discriminated and retaliated against the plaintiff and subjected her to a hostile work environment during her employment with the defendant.

92.    As a result of the hostile work environment that plaintiff was subjected to in her employment, she has  suffered and continues to suffer monetary and compensatory damages, for inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

93.    Defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under Title VII and plaintiff is entitled to an award of punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
### The Pregnancy Discrimination Act (PDA) of 1978

94.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 93 as if set forth fully herein.

95.    At all times relevant to this action, defendant was an "employer" within the meaning of Title VII and/or the PDA and the plaintiff was an employee entitled to protection from discrimination based upon her pregnancy.

96.    Pursuant to the acts and practices alleged above, the defendant engaged in a pattern of pregnancy discrimination by subjecting the plaintiff to disparate and unfavorable treatment and mistreatment in the terms and conditions of her employment.

97.     Pursuant to the acts and practices alleged above, the defendant denied the plaintiff from employment privileges such as leave, training, light duty assignment, reassignment, or reappointment.

98.     As a result of the defendant's unlawful acts and practices alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages, for inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

99.     Defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under the PDA and plaintiff is entitled to an award of punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
### Failure to Accommodate under the Rehabilitation Act

100.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 99 as if set forth fully herein.

101.    At all times relevant to this action, defendant was an "employer" within the meaning of the Rehabilitation Act and the plaintiff was a qualified individual suffering from a disability and/or a high risk pregnancy and was entitled to a reasonable accommodation for her disabled condition.

102.    Pursuant to the acts and practices alleged above, the defendant failed to provide the plaintiff with a reasonable accommodation for her disability and/or high risk pregnancy and further subjected her to disparate and unfavorable treatment and mistreatment in the terms and conditions of her employment.

103.    Pursuant to the acts and practices alleged above, the defendant denied the plaintiff from employment privileges such as leave, training, light duty assignment, reassignment, or reappointment.

104.    As a result of the defendant's unlawful acts and practices alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages, for inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

105.    Defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under the Rehabilitation Act and plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### Retaliation under Title VII

106.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 105 as if set forth fully herein.

107.    At all times relevant to this action, defendant was an "employer" within the meaning of Title VII and the plaintiff was an employee entitled to protection from reprisal after she complained of discrimination and/or engaged in a statutorily protected activity.

108.    Pursuant to the acts and practices alleged above occurring after the plaintiff returned from her leave of absence on or around November 30, 2010, and continuing thereafter, the defendant engaged in a pattern of retaliation and/or reprisal towards the plaintiff after she complained of discrimination by subjecting her to disparate and unfavorable treatment and mistreatment in the terms and conditions of her employment.

109.    The defendant's retaliatory actions towards the plaintiff occurring on November 30, 2010 and continuing until thereafter until March 28, 2011 are all reasonably related to and resulting from her initial engagement in statutorily protected activities in 2009.

110.    As a result of the defendant's unlawful acts and practices alleged above, plaintiff has suffered and continues to suffer monetary and compensatory damages, for inter alia, mental anguish, severe and lasting embarrassment, humiliation, emotional distress and other incidental and consequential damages and expenses.

17

111.    Defendant acted outrageously and with malice and reckless indifference to the plaintiff's protected civil rights under Title VII and plaintiff is entitled to an award of punitive damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a)     declaring that the acts and practices complained of herein are in violation of Title VII, the PDA and the Rehabilitation Act.

(b)     an order enjoining defendant from engaging in the wrongful practices alleged herein and/or reinstating plaintiff to her employment position at the Manhattan Campus;

(c)     directing defendant to pay plaintiff actual, monetary and compensatory damages in an amount to be determined at trial and as provided for pursuant to Title VII, the PDA and the Rehabilitation Act;

(d)     directing defendant to pay plaintiff punitive damages in an amount to be determined at trial and as provided for pursuant to Title VII, the PDA and the Rehabilitation Act;

(e)     awarding plaintiff such interest as is allowed by law; and

(f)     awarding plaintiff the costs of this action as well as for reasonable attorneys' fees as provided for pursuant to Title VII, the PDA and the Rehabilitation Act; and

(g)     awarding such other and further relief as this Court deems just and equitable.

Dated: October 17, 2011
       New York, New York

                                        LEVINE & BLIT, PLLC

                                        _____
                                        Matthew J. Blit, Esq. (4145)

                                        Attorneys for Plaintiff

Empire State Building
350 Fifth Avenue, Suite 3601
New York, NY 10118
Phone: (212) 967-3000
Fax:    (212) 967-3010

# EXHIBIT A

**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION**
**WASHINGTON, D.C. 20420**

ʻJUL 2 5 2011

## TRANSMITTAL OF FINAL AGENCY DECISION OR ORDER

**TO:**      The Parties
Representatives of the Parties (if applicable)
ORM Field Office

**SUBJ:**    Final Agency Decision or Order

Complainant's Name:      Maryam Bagheritoolabi
Agency Case No.:          200H-0630-2010101625
EEOC No(s): (if applicable):   n/a

Enclosed is the Department's Final Agency Decision or Final Order concerning the above-referenced complaint(s) of employment discrimination.

The Final Decision/Order includes a statement explaining the complainant's right of appeal and right to file a civil action.

The transmittal to the complainant and, if applicable, the complainant's representative, includes EEOC Form 573 (MSPB Form 185, if the subject complaint is a "mixed case") for use should the complainant wish to appeal the enclosed Final Decision/Order.

If the complainant requested a hearing before an EEOC administrative judge, the transmittal to the ORM field office also encloses the hearing record, including the EEOC administrative judge's decision, and/or other miscellaneous correspondence/documents provided to this office by the judge.

*for* *Karen Clegg*
Maxanne R. Witkin
Director

Enclosure(s)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYAM BAGHERITOOLABI NIA, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| ERIC K. SHINSEKI, SECRETARY | : |
| DEPARTMENT OF VETERANS AFFAIRS, | : |
| | : |
| Defendant. | : |
| | : |

# SUMMONS and COMPLAINT

## LEVINE & BLIT, PLLC
Attorneys for Plaintiff
350 Fifth Avenue, Suite 3601
New York, New York 10118
Phone: (212) 967-3000
Fax:    (212) 967-3010

TO:    ERIC K. SHINSEKI, SECRETARY
       DEPARTMENT OF VETERANS AFFAIRS
       810 Vermont Avenue, NW
       Washington DC 20420

       Facility: VA New York Harbor Healthcare Systems

## ADMISSION OF SERVICE
Service of a copy of the within                    is hereby admitted.
Dated:
.....................................................................................................
                                            Attorney(s) for

### NOTICE OF ENTRY
PLEASE TAKE NOTICE that the within is a (certified) true copy of
an Order duly entered in the office of the Clerk of the within named Court on
Dated: New York, New York

### NOTICE OF SETTLEMENT
PLEASE TAKE NOTICE that an Order, of which the within is a true copy, will be
presented for settlement to the Hon.              , one of the judges of the within named
Court in New York, on
Dated: New York, New York